IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Roderick A. Carter, | ) | C/A No.: 3:12-3637-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| CPC Logistics, Inc.; CPC Medical Products, LLC; and Hospira Fleet Services, LLC, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

In this employment discrimination case, Roderick A. Carter ("Plaintiff"), proceeding pro se, is suing CPC Logistics, Inc., CPC Medical Products, LLC (collectively "CPC")[1], and Hospira Fleet Services, LLC ("Hospira") for alleged retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"). This matter comes before the court on the motions for summary judgments by CPC [ECF No. 67] and Hospira [ECF No. 68]. These motions having been fully briefed [ECF Nos. 76, 77, 78, 79], they are ripe for disposition. Hospira and CPC also filed motions for leave to supplement the summary judgment motions with a decision by the Department of Labor ("DOL") dismissing Plaintiff's DOL complaint. [ECF Nos. 79, 80]. Plaintiff did not respond to the motions for leave to supplement.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.).

---
[1] For ease of reference, the undersigned refers to both CPC defendants simply as CPC.

Because the motions for summary judgment are dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant CPC's and Hospira's motions for summary judgment.

I.  Factual Background

CPC performs transportation services for corporate customers, such as Hospira. Pruitt Aff. at ¶ 5.[2] Hospira freight is picked up throughout the week in Jacksonville, Florida, and driven by truck to Hospira facilities in North Carolina. The first shift of the week is supposed to begin around 2:00 a.m. on Monday morning, and requires one driver on each team to start in Columbia, drive to Jacksonville, pick up freight, and then drive back to Columbia. ALJ Tr. 22:17–23:13;[3] Pruitt Aff. at ¶ 13. In Columbia, the drivers then meet and switch with the second team member who drives that same truck to Rocky Mount, North Carolina to drop off Hospira's freight, then returns to Columbia. ALJ Tr. 149:21–150:10.

The United States Department of Transportation ("DOT") requires that drivers not work in excess of 14 hours, during which they may not drive in excess of 11 hours, before they are required to have a 10-hour break. Olson Aff. at ¶ 6.[4] CPC drivers complete handwritten on-duty and drive-time reports daily. Covert Aff. at ¶¶ 9–10.[5] On-board

---

[2] The affidavit of Kenneth Pruitt, Division Manager for CPC, may be found at ECF No. 67-15.
[3] The transcript of Plaintiff's ALJ hearing may be found at ECF No. 67-5.
[4] The affidavit of Christie D. Olson, Dispatcher for CPC, may be found at ECF No. 67-18.
[5] The affidavit of Ronald Covert, Regional Manager for CPC, may be found at ECF No. 67-16.

computers are also inside each truck to electronically keep track of drive-time and speed. Covert Aff. at ¶ 9.

CPC hired Plaintiff as a truck driver in early 2007 to provide transportation services to Hospira. Pl. Dep. 26:20–27:7.[6] He first worked the Columbia-Rocky Mount route from 2007 until mid-2010. Pl. Dep. 38:10–22. In mid-2010, Plaintiff moved to the Columbia-Jacksonville route, and drove that leg until his employment ended. Pl. Dep. 38:21–22; 40:23–25.

Plaintiff's disciplinary history prior to November 2010

From the start of 2008 through November 2010, CPC counseled or disciplined Plaintiff as follows:

- Letter dated March 20, 2008: logging errors and hours of service violation (violation of the 14-hour work rule) occurring between January 22 and February 10, [ECF No. 67-2 at 145];

- Letter dated April 1, 2008: log violation concerning violation of the 14-hour rule, occurring on February 16, *id*. at 146;

- Letter dated April 1, 2008: untimely paperwork that caused a ticket issued on March 12 to not be returned to the highway patrol in a timely manner, *id*. at 147;

- Letter dated April 11, 2008: hours of service violation (second warning), occurring on March 1, *id*. at 148;

- Letter dated May 29, 2008: failure to follow call-in procedures, occurring on May 16, *id*. at 1;

- Verbal counseling on May 16, 2008: logging errors occurring between April 7 and April 12, 2008, Covert Aff. at ¶ 14;

- Letter dated May 29, 2008: logging errors, occurring between April 30 and May 3, [ECF No. 67-2 at 150];

---

[6] Plaintiff's deposition may be found at 67-2.

- Letter dated July 27, 2008: logging errors from June 27–28, July 2–4 and July 9–11, *id*. at 151;

- Letter dated September 24, 2008: logging errors, occurring from August 27–30, *id*. at 152;

- Letter dated December 10, 2008: failure to respond to requests for additional information following an accident that Plaintiff had in June 2008, *id*. at 153;

- Letter dated August 12, 2009: failure to follow call-in procedures, occurring on August 3–4, *id*. at 154–55;

- Letter dated August 27, 2009: logging errors (second warning), occurring from July 27–August 1 and August 3–16, *id*. at 156;

- Letter dated November 2, 2009: two-day suspension related to a major preventable accident occurring in June 2008, as well as for overall unsatisfactory job performance, *id*. at 157;

- Letter dated March 3, 2010: failure to follow call-in procedures (second warning), occurring from February 24–26, *id*. at 158–59;

- Letter dated April 6, 2010: logging errors, occurring from February 24–25, March 6 and March 14, *id*. at 160;

- Verbal warning on July 25, 2010: poor customer service and being rude to CPC dispatcher, Covert Aff. at ¶ 14; and

- Letter dated August 18, 2010: five-day suspension for an admitted falsification of driving logs, occurring on July 9 and 10, including a requirement that Plaintiff complete remedial log training by September 10, *id*. at 67-2 at 161, 162–64.

Plaintiff's first charge of discrimination

On November 1, 2010, Plaintiff filed his first charge ("First Charge") of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination in violation of Title VII. In his First Charge, Plaintiff stated that he was suspended and also that he was informed that he was discharged for falsifying his log. [ECF No. 68-3 at 60]. Plaintiff had been notified by letter dated August 18, 2010, that he was being suspended for five days as a result of his admitted log falsification [ECF No. 67-2 at 161, 164], but he was not terminated. Plaintiff received a notice of his right to sue from the EEOC (Pl. Dep. 89:19–20), but never filed a lawsuit.

After filing his First Charge Plaintiff continued to be disciplined as follows:

- Letter dated November 29, 2010: second request for Plaintiff to complete remedial log training (initially requested on August 18) with a new completion deadline of December 19, and a warning that failure to complete the training will result in further discipline up to and including termination, [ECF 67-2 at 165];

- Letter dated December 17, 2010: hours of service violation (violation of the 11-hour drive rule), occurring on December 10, *id*. at 166;

- Letter dated January 4, 2011: third request for Plaintiff to complete remedial log training (previously requested on August 18 and November 29, 2010) with a new completion deadline of January 25, and a warning that failure to complete the training will result in further discipline up to and including termination, *id*. at 167;

- Letter dated April 6, 2011: final warning given related to poor work performance after Plaintiff received a citation on March 30 for an expired IFTA sticker. In this final warning, CPC identified several other disciplinary issues occurring between July 2010 and March 2011 dealing with poor customer service and being rude to a dispatcher, log falsification, multiple refusals to complete required remedial training, and hours of service violations, *id*. at 173–75;

- Letter dated May 14, 2011: complaint on May 9 concerning Plaintiff's failure to follow call-in procedures, *id*. at 176; and

- Letter dated September 29, 2011: failure to answer or return messages from his supervisor on September 21 related to his work schedule, *id*. at 177.

Plaintiff's driving teammate, Kelvin Gordon, began to complain in June 2011 about Plaintiff delaying their route by being late to work and taking an excessive amount of time on his route. Covert Aff. at ¶ 17; ALJ Tr. 155:6–156:1, 196:9–198:25. A summary of Gordon's complaints illustrates, these route delays occurred almost daily and lasted through the end of Plaintiff's employment. [ECF No. 67-16 at 70; ALJ Tr. 179:12–18].

CPC also received complaints from CPC dispatchers and Hospira about Plaintiff being late or delaying his routes, how his delays were causing the drive schedule to get out of sync, his being rude and having a bad attitude towards the dispatchers, and generally not following procedures. [ECF No. 67-2 at 173–75]. These complaints initially began in late 2009, but continued into 2010 and 2011. ALJ Tr. 192:9–193:12, 199:1–200:15. The final complaints were on October 5, 2011, from his teammate and CPC's dispatcher, as relayed to CPC by Hospira's Operations Manager. [ECF No. 67-6 at 68–69]. The complaints again centered around Plaintiff being late to work nearly every night, his delays causing problems with the drive schedule and his not following call-in procedures. *Id*.

On October 5, 2011, CPC terminated Plaintiff, after receiving further complaints about Plaintiff's unexplained delays during the week of September 25, and after giving consideration to Plaintiff's overall unimproved work history despite over 20 disciplines in the preceding three-and-a half years. *Id*. at 76–77. Specifically, the delays during the week of September 25 occurred on September 26 [ECF No. 67-2 at 180–81] and September 28 [ECF No. 76-2 at 182–83]. A review of the logs for those days detail these driving delays.

On September 26, Plaintiff was on duty for 13 hours and 58 minutes, but had only 10 hours and 35 minutes of driving time, with a total of 3 hours and 22 minutes of "on duty-not driving" time, including one break of 1 hour and 15 minutes (5:47 a.m. until 7:02 a.m.). [ECF No. 67-2 at 180–81]. Plaintiff was again on duty for 13 hours and 58 minutes on September 28, with only 10 hours and 49 minutes of driving time and, with a total of 3 hours and 8 minutes of "on duty-not driving" time. [ECF No. 76-2 at 182–83]. When Covert questioned these times, Plaintiff could provide no satisfactory explanation and generally could not remember why he made the stops. Covert Aff. at ¶ 18.

<u>Plaintiff's second charge of discrimination</u>

Plaintiff filed a second charge of discrimination with the EEOC sometime in September or October 2011 (hereinafter "Second Charge") [ECF No. 67-2 at 122–29]. It appears that Plaintiff signed and submitted several versions of his Second Charge: an initial one dated October 3, 2011; a second one dated October 6, 2011, which changed only the date his employment started with CPC; a third one dated January 19, 2012, which amended the particulars of his October 2011 versions to include his termination; and a fourth, to provide an addendum that was also dated January 19, 2012. *Id*. All versions of Plaintiff's Second Charge were based solely on retaliation. *Id*. Although these are the only versions of the Second Charge in the record, Plaintiff also submitted a letter from the EEOC dated September 28, 2011 ("September 28 Letter"), that purports to attach an unsigned charge of discrimination summarizing Plaintiff's claims. [ECF No. 76-10]. The September 28 Letter also states "Because the document you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you file a

charge." *Id*. This letter is the only indication in the record that CPC may have had knowledge of Plaintiff's initiation of his Second Charge prior to his termination.[7]

EEOC submitted its Dismissal and Notice of Rights letter on or about November 5, 2012. [ECF No. 167-2 at 130]. Plaintiff filed this case on December 27, 2012.

II.     Discussion

    A.     Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).   The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).   If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

---

[7] CPC represents that it had no notice of Plaintiff's Second Charge before his termination. [ECF No. 67-1 at 11]. CPC argues that at the earliest, EEOC sent CPC notice of the Second Charge on October 11, 2011. [ECF No. 67-2 at 122 ("On October 11, 2011, the Commission mailed the above referenced Respondent a Notice of Charge of Discrimination, a Charge of Discrimination, and a Small Business Manager letter"); *id*. at 125–26]. Plaintiff testified that he never provided advance notice to CPC that he was going to or had filed his Second Charge. Pl. Dep. 106:2–21.

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    B.    Analysis

        1.    Hospira's Motion

Hospira argues that the court lacks jurisdiction over Plaintiff's claim against it because Plaintiff did not exhaust his administrative remedies as to Hospira by naming it as a respondent in the charges of discrimination. An aggrieved employee may sue only those persons or entities named as respondents in his administrative charge. *See* 42 U.S.C. § 2000e–5(f)(1) (authorizing suit "against the respondent named in the [administrative] charge"); *see also Alvarado v. Board of Trustees,* 848 F.2d 457, 458 (4th Cir.1988) (citing 42 U.S.C. § 2000e–5(f)(1) for proposition that suit may be brought only against respondent named in administrative charge).

Several district courts in the Fourth Circuit have applied the ""substantial identity" test to determine whether a defendant had notice of the EEOC charges and participated in the conciliation process. *See, e.g., Mayes v. Moore,* 419 F. Supp. 2d 775, 782–83 (M.D.N.C. 2006); *Jamieson v. Valle Bank,* No. 7:05-cv-00165, 2005 WL 2233545 (W.D.Va. Sept. 13, 2005); *Tietgen v. Brown's Westminster Motors, Inc.,* 921 F. Supp. 1495, 1498–99 (E.D.Va. 1996); *see also Alvarado,* 848 F.2d at 461 (explaining that the "Fourth Circuit has not had occasion to decide whether to adopt the substantial identity exception" but noting the court in *EEOC v. Am. Nat'l Bank,* 652 F.2d 1176, 1186 n. 5 (4th Cir. 1981), quoted such language "with approval . . . in dictum"). In applying the substantial identity test, courts consider four factors:

> (1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
>
> (2) Whether, under the circumstances, the interest of the named party are so similar to the unnamed party's that for the purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
>
> (3) Whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and
>
> (4) Whether the unnamed party had in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Vanguard Justice Society, Inc. v. Hughes,* 471 F. Supp. 670, 688 (D.Md. 1979); *see also Robinson v. S.C. Dep't of Corr.,* C.A. No. 5:10-2593-HMH-KDW, 2012 WL 581042, at *3 (D.S.C. Mar. 13, 2012); *Grant v. I.N.I. Corp.,* C.A. No. 4:11-1499-RBH-TER, 2012 WL 486881, *3 (D.S.C. Jan. 26, 2012).

Here, Plaintiff was aware that he was performing work for Hospira and has provided no reason for failure to name it as a Respondent. Regarding the second factor, Plaintiff has failed to produce any evidence that Hospira and CPC are so similar that it would have been unnecessary to include Hospira in the administrative process. Plaintiff alleges only that Hospira had significant control over the way he performed his job. [ECF No. 77 at 1–3]. Such allegations are probative only of whether Hospira would qualify as a joint employer if the court determines it has subject matter jurisdiction over Hospira. Plaintiff makes no assertions that Hospira and CPC share management or directors or that they are liable for each other's debts. *See Tietgen*, 921 F. Supp. at 1499 (finding Plaintiff alleged the requisite substantial identity because his complaint suggested the defendants were under common control). Regarding the third factor, Hospira argues that it would suffer unfair prejudice by remaining a party to this action because it was not given the opportunity to respond to the charge or participate in the EEOC's resolution and conciliation process. [ECF No. 68-1 at 13]. Plaintiff has provided no evidence denying that Hospira would not be prejudiced. With respect to the fourth factor, Plaintiff has failed to allege or provide any evidence that Hospira made any representations with respect to its relationship with CPC. Accordingly, Plaintiff has failed to establish the elements for the substantial identity exception to the naming requirement. The undersigned recommends Hospira's motion for summary judgment [ECF No. 68] be granted because Plaintiff's failure to exhaust his administrative remedies against Hospira deprives the court of subject matter jurisdiction against it.

2. CPC's Motion

Title VII prohibits an employer from retaliating against an employee for complaining about prior discrimination or retaliation. 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). Plaintiffs may prove these violations either through direct evidence of retaliatory animus. Absent direct evidence of retaliatory animus, Plaintiffs can prove violations through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).

To prevail under the *McDonnell Douglas* framework, Plaintiff must first establish a prima facie case by showing: (1) that he engaged in protected activity, (2) that his employer took adverse action against him, and (3) that a causal relationship existed between the protected activity and the adverse employment activity. *Price*, 380 F.3d at 212. The burden then shifts to the CPC to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc). If CPC makes this showing, the burden shifts back to Plaintiff to rebut the CPC's evidence by demonstrating that its purported non-retaliatory reasons "were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, (2000));

Plaintiff asserts that he engaged in protected activity by filing a charge of discrimination.[8] [ECF No. 76]. Although CPC argues that it was unaware of the Second Charge until after Plaintiff's termination, it does not dispute that the filing of an EEOC

---

[8] Plaintiff does not specify whether he believes his protected activity was his having filed the First Charge, Second Charge, or both. The undersigned has analyzed both.

charge qualifies as protected activity. Plaintiff appears to argue that CPC took the following adverse actions against him: (1) Covert sent an internal memorandum to all drivers assigned to Hospira that Plaintiff contends affected only him adversely; (2) CPC forced him to drive in severe pain after a dentist appointment; (3) CPC disciplined him for not answering his personal cell phone on his day off; and (4) he was terminated.

To show an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006) (citation and internal quotation marks omitted). "A typical adverse employment action includes discharge, demotion, decrease in compensation, loss of job title or supervisory responsibility, reduced opportunities for promotion, or other conduct that had a significant detrimental effect." *Gurganus v. Beneficial N.C., Inc.,* 25 F. App'x 110, 112 (4th Cir. 2001) (citing *Boone v. Goldin,* 178 F.3d 253, 255–56 (4th Cir.1999)). An adverse employment action often has an economic effect; however, that is not a requirement. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998).

Although Plaintiff claims the August 2011 memorandum affected only him adversely, it was sent to all drivers. Therefore, Plaintiff has not shown that the memo constitutes an adverse employment action. To the extent Plaintiff claims that being forced to return to work after a September 10, 2011, dentist appointment constitutes an adverse employment action, he has provided no evidence to support a claim. Plaintiff provided a copy of the invoice from the dentist, but there is no mention of pain or that Plaintiff could

not return to work. [ECF No. 76-6]. Plaintiff was disciplined for being unavailable when called, but such discipline is contemplated by CPC's written policies, and therefore can not be considered an adverse employment action. [ECF No 67-6 at 14, 67]. Defendant concedes that Plaintiff's termination is an adverse employment action.

Plaintiff must also show a causal connection between the protected activity and the materially adverse employment action. In some circumstances, temporal proximity between the protected activity and adverse action may be sufficient to make a prima facie case of causal connection. *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004).

First Charge

Here, Plaintiff's first protected activity, the First Charge, was filed on November 10, 2010. His termination occurred almost 11 months later on October 5, 2011. The lag in time between the protected activity and the adverse employment action negates any inference of causation. *Id.* ("[T]he passage of time tends to negate the inference of discrimination."); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001) (holding that a six-month lag is sufficient to negate any inference of causation); *see Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. Aug. 2, 2006) (per curiam) (three to four months is insufficient to establish causal connection by temporal proximity alone); *Shields v. Federal Express Corp.*, 120 F. App'x 956 (4th Cir. 2005) (same); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (thirteen months between charge and termination is too long to establish causation).

To the extent Plaintiff attempts to show a causal connection by arguing that CPC displayed a retaliatory animus by disciplining him, such an argument fails because CPC's

discipline of Plaintiff did not substantially increase after he filed his First Charge. *See Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (finding that "a complaining worker is not thereby insulated from the consequences of insubordination or poor performance"). Therefore, Plaintiff has not presented a prima facie case of retaliation related to his First Charge because he has not shown a causal connection between his First Charge on November 10, 2010, and his termination on October 5, 2011.

Second Charge

Viewing the evidence in the light most favorable to Plaintiff, the September 28 Letter demonstrates that CPC was aware that he had filed the Second Charge. [ECF No. 76-10]. The short temporal proximity of one week between the September 28 Letter and Plaintiff's termination provides the requisite causal connection for Plaintiff's prima facie case.

Because Plaintiff has made a prima facie case related to his Second Charge, the burden shifts to CPC to set forth a legitimate non-discriminatory reason for terminating Plaintiff. CPC's letter of termination to Plaintiff indicated he was terminated for "continued poor job performance and insubordinate behavior." [ECF No. 67-2 at 178]. CPC having set forth a legitimate non-retaliatory reason for his discharge, Plaintiff has the burden to show that CPC's purported non-retaliatory reasons were not its true reasons and that retaliation was the real reason for the termination. *Foster v. U. of Maryland-E. Shore*, 14-1073, 2015 WL 2405266, at *4 (4th Cir. May 21, 2015).

Plaintiff has provided no evidence, other than his own conclusory allegations that CPC's real reason for terminating him was in retaliation for him having filed the Second

Charge. Plaintiff's disciplinary history shows extensive problems with Plaintiff's performance of his job since 2008. Although Plaintiff's Second Charge was initiated shortly before his termination, temporal proximity alone is not sufficient to establish that his engagement in protected activity was a "but for" cause of his termination. *See Staley v. Gruenberg*, 575 F. App'x 153, 156 (4th Cir. 2014) (holding that temporal proximity was insufficient to establish that protected activity was "but for" cause for adverse employment action). Because Plaintiff has presented no evidence that CPC's legitimate non-retaliatory reason was pretext for retaliation, the undersigned recommends CPC be granted summary judgment.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the motions for summary judgment filed by CPC [ECF No. 67] and Hospira [ECF No. 68] be granted. If the district judge accepts this recommendation, Hospira's and CPC's motions for leave to supplement their motions for summary judgment with the DOL decision [ECF Nos. 80, 81] will be rendered moot.

IT IS SO RECOMMENDED.

*[signature: Shiva V. Hodges]*

June 30, 2015                                                Shiva V. Hodges
Columbia, South Carolina                           United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).